UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**DANIEL HLAVAC**
individually and on behalf of all
others similarly situated,

    **Plaintiff,**

v.

**PACAS, INC.**

    **Defendant.**

_____/

CASE NO. 1:25-cv-2864

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Daniel Hlavac (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff bring this action to enforce the consumer-privacy provisions of the TCPA alleging that Pacas, Inc. ("Pacas") violated the TCPA by sending telemarketing text messages to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as sending such text messages to people who had previously asked to no longer receive them.

## PARTIES

4. Plaintiff Daniel Hlavac is an individual.

5. Defendant Pacas, Inc. is a corporation located in this District.

**JURISDICTION AND VENUE**

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has specific personal jurisdiction over Pacas because the company directed calls into this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the text messages at issue were sent into this District.

**BACKGROUND**

**A.  The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

9. The TCPA prohibits sending multiple telemarketing calls, including text messages, to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

3

**B.      The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls.**

13.     The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. I*n the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

16.     These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

17.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

18.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

4

**FACTUAL ALLEGATIONS**

19. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. Plaintiff's cellular telephone number is 214-997-XXXX.

21. Plaintiff personally listed his telephone number on the National Do-Not-Call Registry on October 27, 2020, and has not removed it from the Registry since that time.

22. Plaintiff uses this telephone number for personal, residential, and household purposes.

23. Plaintiff's telephone number is not associated with any business, nor does Plaintiff use the number for business purposes.

24. In November 2024, Plaintiff began receiving text message solicitations to his cellular telephone, 214-997-XXXX, from Defendant.

25. These text messages came from short code 35646.

26. The messages solicited Plaintiff to buy Defendant's products through offers and promotions.

27. For example, on November 14, 2024, at 4:19 p.m., Plaintiff received the following text message solicitation from Defendant on his cellular phone, 214-997-XXXX:

> Pacas: TODAY ONLY: Buy a scarf and get the second one 50% off with code SCARF50!
> Don't miss out, shop now! https://smspacas.com/BTtGb7
> Hi from our new number! Thanks for sticking with us. Text STOP to opt out, HELP for help. Msg & data rates may apply Msgs are

28. Plaintiff received additional text message solicitations of the same content on his cellular telephone, 214-997-XXXX, on the following dates and times:

- November 14, 2024, at 4:19 p.m.
- November 15, 2024, at 4:05 p.m.

5

- November 16, 2024, at 4:01 p.m.
- November 17, 2024, at 12:02 p.m.
- November 17, 2024, at 7:02 p.m.
- November 19, 2024, at 4:16 p.m.
- November 21, 2024, at 4:01 p.m.
- November 22, 2024, at 4:03 p.m.
- November 23, 2024, at 12:03 p.m.
- November 23, 2024, at 6:02 p.m.
- November 24, 2024, at 12:04 p.m.
- November 24, 2024, at 6:05 p.m.
- November 25, 2024, at 6:01 p.m.
- November 26, 2024, at 4:00 p.m.

29. On November 26, 2024, Plaintiff replied with the instruction to STOP as advised in Defendant's solicitation text messages.

30. Nevertheless, Plaintiff continued to receive text message solicitations from Defendant.

31. In fact, Plaintiff texted STOP instructions at least fifty (50) times, including on the following dates:

- December 11, 2024
- December 12, 2024
- December 13, 2024
- December 14, 2024
- December 15, 2024
- December 17, 2024
- December 18, 2024
- December 19, 2024
- December 20, 2024
- December 22, 2024
- December 25, 2024

6

- December 26, 2024
- December 27, 2024
- December 30, 2024
- January 1, 2025
- January 3, 2025
- January 4, 2025
- January 5, 2025
- January 7, 2025
- January 9, 2025
- January 10, 2025
- January 11, 2025
- January 12, 2025
- January 14, 2025
- January 15, 2025
- January 16, 2025
- January 17, 2025
- January 19, 2025
- January 21, 2025
- January 22, 2025
- January 24, 2025
- January 25, 2025
- January 27, 2025
- January 28, 2025
- January 29, 2025
- January 30, 2025
- February 2, 2025
- February 4, 2025
- February 6, 2025
- February 7, 2025
- February 8, 2025
- February 9, 2025
- February 11, 2025
- February 13, 2025
- February 15, 2025
- February 16, 2025
- February 20, 2025
- February 22, 2025

32. Despite Plaintiff's clear opt-out instructions, Plaintiff received at least one hundred ten (110) text message solicitations from Defendant after his initial STOP instruction, including on the following dates and times:

- November 27, 2024, at 4:02 p.m.
- November 28, 2024, at 4:01 p.m.
- November 29, 2024, at 9:00 a.m.
- November 29, 2024, at 12:31 p.m.
- November 29, 2024, at 7:45 p.m.
- November 30, 2024, at 11:02 a.m.
- November 30, 2024, at 4:00 p.m.
- December 1, 2024, at 11:03 a.m.
- December 1, 2024, at 7:01 p.m.
- December 2, 2024, at 9:00 a.m.
- December 2, 2024, at 12:30 p.m.
- December 2, 2024, at 5:16 p.m.
- December 3, 2024, at 4:02 p.m.
- December 3, 2024, at 7:46 p.m.
- December 4, 2024, at 10:52 a.m.
- December 4, 2024, at 7:31 p.m.
- December 5, 2024, at 12:00 p.m.
- December 5, 2024, at 7:30 p.m.
- December 6, 2024, at 12:02 p.m.
- December 6, 2024, at 7:31 p.m.
- December 7, 2024, at 12:03 p.m.
- December 7, 2024, at 7:30 p.m.
- December 8, 2024, at 12:02 p.m.
- December 8, 2024, at 6:03 p.m.
- December 9, 2024, at 11:00 a.m.
- December 9, 2024, at 7:30 p.m.
- December 10, 2024, at 11:02 a.m.
- December 10, 2024, at 7:31 p.m.
- December 11, 2024, at 11:03 p.m.
- December 11, 2024, at 7:32 p.m.
- December 12, 2024, at 10:59 a.m.
- December 12, 2024, at 7:31 p.m.
- December 13, 2024, at 11:04 a.m.
- December 13, 2024, at 7:31 p.m.
- December 14, 2024, at 12:02 p.m.
- December 14, 2024, at 7:31 p.m.
- December 15, 2024, at 12:02 p.m.
- December 15, 2024, at 7:03 p.m.
- December 16, 2024, at 11:00 a.m.
- December 16, 2024, at 7:31 p.m.
- December 17, 2024, at 11:01 a.m.
- December 17, 2024, at 7:31 p.m.

- December 18, 2024, at 11:02 a.m.
- December 19, 2024, at 11:01 a.m.
- December 19, 2024, at 7:31 p.m.
- December 20, 2024, at 11:01 a.m.
- December 20, 2024, at 7:31 p.m.
- December 21, 2024, at 12:00 p.m.
- December 21, 2024, at 7:30 p.m.
- December 22, 2024, at 12:01 p.m.
- December 22, 2024, at 7:00 p.m.
- December 23, 2024, at 3:59 p.m.
- December 24, 2024, at 4:01 p.m.
- December 25, 2024, at 4:12 p.m.
- December 26, 2024, at 4:03 p.m.
- December 27, 2024, at 7:31 p.m.
- December 28, 2024, at 4:01 p.m.
- December 29, 2024, at 4:01 p.m.
- December 30, 2024, at 4:04 p.m.
- December 31, 2024, at 4:01 p.m.
- January 1, 2025, at 4:02 p.m.
- January 3, 2025, at 4:01 p.m.
- January 4, 2025, at 8:01 a.m.
- January 4, 2025, at 4:01 p.m.
- January 5, 2025, at 12:02 p.m.
- January 7, 2025, at 4:00 p.m.
- January 9, 2025, at 5:17 p.m.
- January 10, 2025, at 4:02 p.m.
- January 10, 2025, at 7:30 p.m.
- January 11, 2025, at 12:01 p.m.
- January 11, 2025, at 4:00 p.m.
- January 12, 2025, at 12:02 p.m.
- January 14, 2025, at 4:02 p.m.
- January 15, 2025, at 4:07 p.m.
- January 16, 2025, at 4:32 p.m.
- January 17, 2025, at 4:01 p.m.
- January 17, 2025, at 7:04 p.m.
- January 18, 2025, at 12:16 p.m.
- January 18, 2025, at 7:01 p.m.
- January 19, 2025, at 12:30 p.m.
- January 19, 2025, at 7:07 p.m.
- January 21, 2025, at 4:01 p.m.
- January 22, 2025, at 4:22 p.m.
- January 23, 2025, at 4:03 p.m.
- January 24, 2025, at 4:02 p.m.
- January 25, 2025, at 4:01 p.m.

- January 26, 2025, at 12:01 p.m.
- January 26, 2025, at 4:00 p.m.
- January 27, 2025, at 4:02 p.m.
- January 27, 2025, at 7:30 p.m.
- January 28, 2025, at 10:46 a.m.
- January 28, 2025, at 7:32 p.m.
- January 29, 2025, at 11:31 a.m.
- January 29, 2025, at 7:31 p.m.
- January 30, 2025, at 11:30 a.m.
- January 30, 2025, at 7:32 p.m.
- January 31, 2025, at 11:03 a.m.
- January 31, 2025, at 7:32 p.m.
- February 1, 2025, at 12:01 p.m.
- February 1, 2025, at 4:02 p.m.
- February 2, 2025, at 12:00 p.m.
- February 2, 2025, at 6:30 p.m.
- February 4, 2025, at 10:30 a.m.
- February 4, 2025, at 7:31 p.m.
- February 6, 2025, at 11:47 a.m.
- February 6, 2025, at 7:31 p.m.
- February 7, 2025, at 8:57 a.m.
- February 7, 2025, at 7:15 p.m.
- February 8, 2025, at 12:01 p.m.
- February 8, 2025, at 4:01 p.m.
- February 9, 2025, at 12:02 p.m.
- February 9, 2025, at 4:03 p.m.
- February 11, 2025, at 12:16 p.m.
- February 11, 2025, at 7:16 p.m.
- February 13, 2025, at 11:36 a.m.
- February 13, 2025, at 6:46 p.m.
- February 14, 2025, at 10:32 a.m.
- February 14, 2025, at 7:01 p.m.
- February 15, 2025, at 11:03 a.m.
- February 15, 2025, at 4:01 p.m.
- February 16, 2025, at 12:04 p.m.
- February 16, 2025, at 7:00 p.m.
- February 20, 2025, at 10:31 a.m.
- February 22, 2025, at 7:02 p.m.

33. Plaintiff did not provide prior express consent to receive text message solicitations on his cellular phone from, or on behalf of, Defendant.

34. Plaintiff was annoyed and harassed by the repeated spam solicitation text messages from Defendant and Defendant's noncompliance with his stop requests.

35. As demonstrated by the above messages, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

36. As demonstrated by the above messages, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

37. As demonstrated by the above messages, Defendant does not honor consumer requests to opt-out of text message solicitations.

38. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

39. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

40. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

41. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

42. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and that those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

43. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports

11

show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and Class members. Defendant also has access to text message logs showing Plaintiff's and Class members' inbound opt-out requests.

44. Plaintiff and Class Members revoked any consent they may have previously provided to Defendant by replying with a "STOP" or similar opt-out instruction in response to Defendant's text messages.

45. Defendant's text messages caused Plaintiff and Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ACTION ALLEGATIONS

46. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

47. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

48. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation text message from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) who had previously asked for the text messages to stop; and (5) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the text messages, (4) who had previously asked for the text messages to stop and (5) within the four years prior to the filing of the Complaint.

49. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

50. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

51. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

52. This Class Action Complaint seeks injunctive relief and money damages.

53. The Classes, as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

54. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the text messages were sent in a generic fashion.

55. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

56. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

57. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

58. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

  a. Whether Defendant sent multiple text messages to Plaintiff and members of the National Do Not Call Registry Class;

  b. whether Defendant recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

  c. Whether Defendant's conduct constitutes a violation of the TCPA; and

  d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

59. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

60. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

61. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

62. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

63. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing text messages, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

65. Defendant's violations were negligent, willful, or knowing.

66. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every text message sent and up to $1,500 in damages if the text messages are found to be willful.

67. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending telemarketing calls, including text messages, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing text messages, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such text messages stop.

70. Defendant's violations were negligent, willful, or knowing.

71. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every text message sent and up to $1,500 in damages if the text messages are found to be willful

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from sending calls or text messages soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 18th day of March, 2025.

By: */s/ Samuel J. Strauss*
Samuel J. Strauss (ARDC 6340331)
Alex Phillips (ARDC 6341301)
sam@straussborrelli.com
aphillips@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiffs and Proposed Class*

17